COURT OF APPEALS OF VIRGINIA

Present:   Judges Annunziata, Clements and McClanahan
Argued at Richmond, Virginia


ALLEN BROWN
                                                      OPINION BY
v.        Record No. 1961-03-2          JUDGE ROSEMARIE ANNUNZIATA
                                                      JUNE 8, 2004
SPOTSYLVANIA DEPARTMENT OF
 SOCIAL SERVICES


FROM THE CIRCUIT COURT SPOTSYLVANIA COUNTY
William H. Ledbetter, Jr., Judge

(Donald R. Skinker, on brief), for appellant.  Appellant submitting
on brief.

Joseph A. Vance, IV (Vance & Associates, on brief), for appellee.


Allen Brown (Brown) appeals from an order of the Circuit Court of Spotsylvania County

terminating his parental rights with respect to his son, D.B.  He contends the circuit court erred in

terminating his parental rights because: (1) the Spotsylvania Department of Social Services

(DSS) did not make reasonable efforts to reunite D.B. with Brown, and (2) DSS did not

adequately consider placement of D.B. with Brown's mother, Rosemary Brown.  For the

following reasons, we affirm.[1]

---

[1] The record reflects that the guardian *ad litem* for D.B. was provided notice pursuant to
Rule 5A:6.  He did not file a responsive brief with this Court, however.  Standard J. of the
Standards to Govern the Performance of Guardians Ad Litem for Children, effective September
1, 2003, calls for all guardians *ad litem* to "[f]ile appropriate . . . briefs[] and appeals on behalf of
the child and ensure that the child is represented by a [guardian *ad litem*] in any appeal involving
the case."  Id. at http://courts.state.va.us/gal/gal_standards_children_080403.html.

I.  Background

On March 21, 2001, DSS visited the home of Allen Brown in response to information that a child living in the home, A.V., was severely bruised.  DSS discovered that A.V. had two large gashes on his head, two black eyes, bite marks on his shoulder and inner thigh, and numerous other bruises and scratches on his body and face.  It was subsequently determined that A.V. had a fractured skull as well.  DSS immediately removed A.V. and four other children living in the home, including Brown's son, D.B.  A.V. is not related to Brown.

DSS interviewed the children living in the home, and those interviews revealed that Brown and Shawna Ostberg, another adult woman who lived with Brown, encouraged the children to "punch and scratch A.V. because he [defecated] on himself."  The children also stated that A.V. "was made to sleep and eat in the bathroom."

The following day, March 22, 2001, Brown was arrested for child abuse and neglect in violation of Code § 40.1-103.  All children were removed from the home, including Brown's son, D.B.  On May 9, 2001, the juvenile and domestic relations district court made a finding of abuse and neglect against Brown with respect to D.B.  DSS filed a foster care plan with the goal of returning D.B. to Brown's care, which the juvenile court approved on June 1, 2001.

The foster care plan required Brown to obtain and maintain suitable housing and to complete parenting classes, anger management classes, a substance abuse evaluation, and a psychological evaluation.  Brown completed the anger management and parenting classes.  However, the parenting class instructor concluded that, "based on information received in class, interviews with the couple, and parent counseling sessions[,] the risk for abuse and neglect remains high."  She noted that "Mr. Brown . . . [has] a difficult time recognizing that any of [his] behaviors place [the] children in danger."

On October 31, 2001, the circuit court convicted Brown of the abuse and neglect of A.V. in violation of Code § 40.1-103 after receiving his guilty plea. Brown's expected release date is January 15, 2006.

On January 9, 2002, the juvenile court ruled, pursuant to Code § 16.1-281(B)(3), that DSS no longer had to make reasonable efforts to reunite D.B. with Brown due to Brown's October 31, 2001 conviction. DSS subsequently filed a petition to terminate Brown's parental rights with respect to D.B. on February 8, 2002. The juvenile court ordered the termination of Brown's parental rights on October 7, 2002. Brown appealed the juvenile court order to the circuit court.

Before the juvenile court ordered the termination of Brown's parental rights, Brown's mother, Rosemary Brown, filed a petition seeking custody of D.B. In the circuit court hearing, Troi Coleman, a foster care worker for DSS, testified that she had investigated Rosemary as a possible relative placement for D.B. From interviews with Brown and Rosemary's daughter, Kim Marshall, Coleman learned that the living conditions in Rosemary's home were inadequate and that Brown believed "that his mother was not a possibility" for placement due to her living conditions, age, and work hours. At the time of the interviews, Rosemary resided in a one-bedroom apartment in Connecticut. Marshall "reiterated that space was an issue" in Rosemary's apartment, and Coleman learned that Rosemary in fact supported Marshall as the appropriate relative with whom to place D.B. The New Hampshire DSS informed Coleman about the suitability of Marshall's home. It had recently removed K., another child of Brown, from Marshall's care and it had not yet decided to place K. with Rosemary, notwithstanding the fact that Marshall and Rosemary lived in the same apartment complex at that time; the New Hampshire DSS only allowed Rosemary supervised visitation with K. Contrary to his earlier stated reservations, Brown expressed support for his mother's request for custody at the circuit

court hearing. Rosemary testified that she had the ability to care for D.B. if she were granted custody, that she was capable of supporting herself, and that she had moved to a larger apartment.

By order dated July 17, 2003, the circuit court terminated Brown's parental rights and denied Rosemary's petition for custody of D.B. This appeal followed.

## II. Analysis

Brown urges two grounds for reversal of the circuit court's decision. First, he argues that the circuit court erred in finding that DSS did not have to make reasonable efforts to reunite D.B. with Brown after Brown's conviction for child abuse and neglect. Second, he argues that DSS failed to consider placing D.B. with Rosemary prior to termination of his parental rights. We address each argument in turn.

### A. Standard of Review

When addressing matters concerning the custody and care of a child, this Court's paramount consideration is the child's best interests. Toombs v. Lynchburg Div. of Soc. Servs., 223 Va. 225, 230, 288 S.E.2d 405, 407-08 (1982). On appeal, we presume that the trial court thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests. Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990). The trial court is vested with broad discretion in making decisions "necessary to guard and to foster a child's best interests." Id. at 328, 387 S.E.2d at 795. We will not disturb a trial court's factual findings on appeal unless plainly wrong or without evidence to support them. Id.

*B. DSS Was Not Required to Pursue Efforts to Reunite D.B. with Brown Following Brown's Conviction for Child Abuse and Neglect*

Code § 16.1-281(B) provides in relevant part:

> The local board or other child welfare agency having custody of the child shall not be required by the court to make reasonable efforts to reunite the child with a parent if the court finds that . . . (3) the parent has been convicted of an offense under the laws of this Commonwealth or a substantially similar law of any other state, the United States or any foreign jurisdiction that constitutes felony assault resulting in serious bodily injury or felony bodily wounding resulting in serious bodily injury or felony sexual assault, if the victim of the offense was a child of the parent or a child with whom the parent resided at the time of such offense.[2]

The statute defines "serious bodily injury" as an injury "that involves substantial risk of death, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ or mental faculty." Code § 16.1-281(B).

By order dated January 9, 2002, the juvenile and domestic relations district court found that DSS need not continue its efforts to reunite Brown with D.B. because Brown was convicted

---

[2] Code § 16.1-281(B) was amended in 2002 to include subsection (4), which provides:

> or (4) based on clear and convincing evidence, the parent has subjected any child to aggravated circumstances, or abandoned a child under circumstances which would justify the termination of residual parental rights pursuant to subsection D of § 16.1-283.
>
> As used in this section:
>
> *"Aggravated circumstances"* means torture, chronic or severe abuse, or chronic or severe sexual abuse, if the victim of such conduct was a child of the parent or child with whom the parent resided at the time such conduct occurred, including the failure to protect such a child from such conduct, which conduct or failure to protect: (i) evinces a wanton or depraved indifference to human life, or (ii) has resulted in the death of such a child or in serious bodily injury to such a child.

Because this amendment was added after Brown's conviction for child abuse, we do not consider its applicability to this appeal.

of abusing and neglecting A.V., a child who resided with him, in violation of Code § 40.1-103.[3] In its final order terminating Brown's parental rights, the circuit court ruled that DSS was no longer required to provide services to Brown because it found "by clear and convincing evidence that Allen Brown [was] convicted of an offense under the laws of this Commonwealth which constitutes felony assault resulting in serious bodily injury."

Although he acknowledges that his violation of Code § 40.1-103 constituted a felony, Brown contends that Code § 40.1-103 cannot be construed as a "felony assault" because it does not contain the common law elements of assault, specifically the intent to cause bodily harm. We disagree because we find that the term "felony assault," as used in Code § 16.1-281(B)(3), means any felonious crime that results in serious bodily injury to a child of the parent or a child who lives with the parent.

Code § 16.1-281(B) was enacted in response to 42 U.S.C. § 671, a legislative effort by the federal government to bring uniformity to the states' foster care and adoption assistance programs in exchange for federal aid. See 42 U.S.C. § 670 et seq. Code § 16.1-281(B) closely mirrors 42 U.S.C. § 671(a)(15)(D). Subsection (D)(ii)(IV) of the federal statute provides that reasonable efforts to reunite the child with a parent need not be made if the parent has "committed a felony assault that results in serious bodily injury to the child or another child of

---

[3] In 2001, when Brown was tried and convicted of child abuse and neglect, Code § 40.1-103 provided:

> It shall be unlawful for any person . . . having custody of any child willfully or negligently to cause or to permit the life of such child to be endangered or the health of such child to be injured, or willfully or negligently to cause or to permit such child to be placed in a situation that its life, health, or morals may be endangered, or to cause or permit such child to be . . . tortured, tormented, mutilated, beaten, or cruelly treated. Any person violating this section shall be guilty of a Class 6 felony.

the parent." Neither the federal statute nor Virginia's statute expressly defines the term "felony assault." The federal statute makes clear in other subsections, however, "that Congress expected the state legislators to insert into the applicable state statutes the state crimes that would meet the federal requirement instead of simply copying that portion of 42 U.S.C. § 671(a)(15)(D)." State v. Florance S., 666 N.W.2d 741, 750-52 (Neb. App. 2003), overruled on other grounds by State v. Selina N., 669 N.W.2d 429, 435 (Neb. 2003); see also 42 U.S.C. § 671(a)(15)(D)(i) ("the parent has subjected the child to aggravated circumstances (as defined in State law, which definition may include but need not be limited to abandonment, torture, chronic abuse, and sexual abuse)").

Assault is a common law crime in Virginia. See Jones v. Commonwealth, 184 Va. 679, 681, 36 S.E.2d 571, 572 (1946). Although the elements of assault[4] and the elements of child abuse and neglect, as defined by Code § 40.1-103, are not the same, we are persuaded that the legislature did not intend to limit the definition of "felony assault" found in Code § 16.1-281(B)(3) to those crimes that only include the elements of common law assault. Rather, we hold that the term "felony assault" in Code § 16.1-281(B)(3) means any crime which results in serious bodily injury to the child.

In reaching the conclusion that the term "felony assault," as used in Code § 16.1-281(B)(3), encompasses crimes other than common law assault, we are guided by the

---

[4] Assault is defined as

> an attempt with force and violence, to do some bodily hurt to another, whether from wantonness or malice, by means calculated to produce the end if carried into execution; it is any act accompanied with circumstances denoting an intention, coupled with a present ability, to use actual violence against another person.

Zimmerman v. Commonwealth, 266 Va. 384, 387, 585 S.E.2d 538, 539 (2003).

usual rules of statutory construction. "In construing statutes, courts are charged with ascertaining and giving effect to the intent of the legislature." Crown Cent. Petroleum Corp. v. Hill, 254 Va. 88, 91, 488 S.E.2d 345, 346 (1997). "[A] fundamental rule of statutory construction requires that courts view the entire body of legislation and the statutory scheme to determine the 'true intention of each part.'" Virginia Real Estate Bd. v. Clay, 9 Va. App. 152, 157, 384 S.E.2d 622, 625 (1989) (quoting McDaniel v. Commonwealth, 199 Va. 287, 292, 99 S.E.2d 623, 627 (1957)). "In construing statutes, courts should give the fullest possible effect to the legislative intent embodied in the entire statutory enactment." Id.

> If, however, the words in the statute are not sufficiently explicit, we may determine legislative intent "from the occasion and necessity of the statute being passed [or amended]; from a comparison of its several parts and of other acts *in pari materia*; and sometimes from extraneous circumstances which may throw light on the subject."

Yamaha Motor Corp. v. Quillian, 264 Va. 656, 665, 571 S.E.2d 122, 126 (2001) (quoting Richmond v. Sutherland, 114 Va. 688, 691, 77 S.E. 470, 471 (1913)) (alteration in original). With these principles in mind, we conclude that the conviction of a crime other than assault that results in serious bodily injury qualifies as a "felony assault" under Code § 16.1-281(B)(3) for three reasons.

First, we are persuaded by the focus of "the entire statutory enactment" that the legislature's overarching concern in adopting Code § 16.1-281(B) was the physical health of the child, made evident in subsection (B)(3) of the statute, which establishes "serious bodily injury" to the child as a determinative factor in applying the statute. The term "serious bodily injury" is defined as that injury which "involves substantial risk of death, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty." Code § 16.1-281(B). Irrespective of whether the offense was an assault or a "bodily wounding," it must have resulted in serious bodily injury to the child-victim

to satisfy the requirements of Code § 16.1-281(B)(3). Consistent with the purpose of the act, we believe the provision's focus on crimes that result in serious bodily injury indicates, in this particular instance, that the legislature is not as concerned with the nomenclature or the elements of the crime itself, but rather with the effect the crime had on the child-victim.

Second, we note that an act which results in serious bodily injury is not an assault; it is a battery. Therefore, incorporating the common law definition of assault to the term "felony assault" in Code § 16.1-281(B)(3), as Brown urges, would not be appropriate because the predicate act or offense in that statute must result in serious bodily injury. Code § 16.1-281(B)(3). By coupling the term "felony assault" with serious bodily injury, the legislature defined the term within the statute itself. It is thus neither necessary nor appropriate to look beyond the words of the statute to discern the meaning of "felony assault."

Third, and finally, an interpretation limiting the definition of "felony assault" in Code § 16.1-281(B)(3) to the crime of felony assault as defined elsewhere in the Code would lead to an absurd result. An assault in Virginia is punishable only as a misdemeanor, see Code § 18.2-57(A); see also Jones, 184 Va. at 681, 36 S.E.2d at 572, unless the person assaulted is a law enforcement officer, in which case the offense is punishable as a felony. See Code § 18.2-57(C). Were we to interpret the statute as Brown suggests, the "felony assault" provision of Code § 16.1-281(B)(3) would be rendered meaningless because one could never commit a "felony assault" against a child. We decline to interpret Code § 16.1-281(B)(3) in such a manner. The "plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, or strained construction." Turner v. Commonwealth, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983).

Here, the record establishes that Brown encouraged the other children in the home to hurt A.V.[5] As a result of the beatings administered by the other children, A.V. suffered multiple injuries, the most serious of which was a fractured skull. A fractured skull plainly "involves a substantial risk of death" and may lead to "protracted and obvious disfigurement." See Code § 16.1-281(B). Thus, although Brown was convicted of child abuse and neglect in violation of Code § 40.1-103, his crime "constitute[d] [a] felony assault resulting in serious bodily injury" to a child with whom he was living at the time. Id. Considering the purpose of Code § 16.1-281 as a whole, and the court's paramount duty to protect the best interests of children, we conclude that, under the facts of this case, Brown's crime of child abuse and neglect, as defined by Code § 40.1-103, and the result it caused sufficed to meet the definition of the term "felony assault" in Code § 16.1-281(B)(3). We, therefore, affirm the trial court's determination that DSS was relieved of its duty to provide services to Brown in an attempt to reunite him with D.B.

### C. DSS Did Not Fail To Consider Placing D.B. with a Relative

Brown argues that DSS did not give sufficient consideration to placing D.B. with his grandmother, Rosemary. In support of his position, Brown relies primarily on the failure of DSS to conduct a home study of Rosemary's home. We reject Brown's contention, finding that DSS investigated Rosemary in accordance with its statutory duty and that, in any event, Rosemary's testimony sufficiently apprised the circuit court of the suitability of placing D.B. with her.

Code § 16.1-283(A) provides that, in a termination of parental rights case, "the court shall give a consideration to granting custody to relatives of the child, including grandparents."

---

[5] We note that Code § 16.1-281(B)(3) empowers the court to look to the facts underlying the previous predicate offense. The legislature's use of the term "constitute," which means "to make up (the element or elements of which a thing . . . is made up)," Webster's Third New Int'l Dictionary 486 (1993), requires that we discern the underlying facts that "made up" or "constituted" the "felony assault." Furthermore, only an inquiry into the underlying facts of the offense would reveal whether it resulted in serious bodily injury to a child; a conviction order does not reveal such details.

"Before the court grants custody of a child, under the provisions of Code § 16.1-283(A) the Department has a duty to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 131, 409 S.E.2d 460, 465 (1991). Nothing in the statute or case law suggests that DSS has an affirmative duty to conduct a home study. That being said, DSS is mandated "to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options." Id. We find that DSS met that requirement.

The record reveals that DSS investigated Rosemary as a possible placement for D.B. At the time of D.B.'s removal, DSS questioned Brown regarding possible placements for his son. Brown indicated at that time that his mother Rosemary was "not a possibility" due to her age, work hours, and living arrangements. Instead, Brown suggested his sister, Kim Marshall, as a possible placement for D.B., a choice in which Rosemary concurred. However, the record establishes that K., another child of Brown, had been recently removed from Marshall's home and care and that the New Hampshire DSS had not placed K. with Rosemary, only according her supervised visitation with the child at the time. DSS presented the facts discussed above to the trial court for its consideration in determining the propriety of placing the child with a relative.

Moreover, Rosemary testified at the hearing and informed the court of her "suitability and willingness" to take D.B. into her custody. See Hawthorne v. Smyth County Dep't of Social Servs., 33 Va. App. 130, 139, 531 S.E.2d 639, 644 (2000). The trial court also heard evidence from an expert, Ann Henley, who had evaluated "the family history of the children and the parents." Based on her evaluation, Henley concluded that D.B. had no attachment to, or bond with, Rosemary. She determined that Rosemary last saw D.B. when he was ten months old. She

further concluded that placing D.B. with Rosemary would separate him from his sister, H., "the only constant in D.B.'s whole existence."[6] "Thus, as required by statute, the trial court was presented with evidence for its consideration as to the suitability of placing [D.B.] with [Rosemary] before it ordered the termination of appellant['s] parental rights." Id. Based on the evidence the trial court received, we cannot say that its decision to deny Rosemary's petition for custody of D.B. was plainly wrong.

For the foregoing reasons, we affirm the decision of the circuit court terminating Brown's parental rights.

Affirmed.

---

[6] H. is not related to Rosemary, greatly reducing the chance that she and D.B. could be joined in her household.