COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, McClanahan and Senior Judge Coleman
Argued at Richmond, Virginia


TANICKA NICOLE HOLMES

                                              MEMORANDUM OPINION* BY
v.       Record No. 1011-05-2               JUDGE ELIZABETH A. McCLANAHAN
                                                   JANUARY 17, 2006
DEPARTMENT OF SOCIAL SERVICES,
 CITY OF RICHMOND


              FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                          Walter W. Stout, III, Judge

            Philip Carter Strother (Charles R. Samuels; Strother Law Offices,
            PLC, on brief), for appellant.

            Kate D. O'Leary; Danielle A. Ferguson, Guardian *ad litem* for the
            minor children (Ferguson Law Firm, on brief), for appellee.


        Tanicka Holmes (mother) appeals the trial court's entry of an order involuntarily

terminating her residual parental rights under Code § 16.1-283.  She contends the trial court

erred in holding that the Department of Social Services (DSS) satisfied its duty to investigate

Stella Holmes, the children's maternal aunt, as a possible custodian.  In the alternative, mother

argues that the trial court erred by not considering aunt as an appropriate placement.  For the

reasons that follow, we affirm the judgment of the trial court.

                                    I.  BACKGROUND

        When mother was arrested in February 2003, she placed her children, C.B. and S.H., with

the children's maternal grandmother.  Grandmother called DSS and indicated that she was no

longer in a position to care for the children and requested that DSS assume custody.  In February

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

2003, DSS obtained custody of the children after the Richmond City Juvenile and Domestic Relations District Court (JDR court) sustained DSS's petition for abuse and neglect. In October 2004, the JDR court granted the petition to terminate the mother's parental rights.

At the circuit court hearing on mother's appeal of the termination decision,[1] aunt testified that in January 2004, she indicated to DSS that she would like to "take the kids." In January 2004, aunt was 18 years old, living with grandmother, and unemployed. Aunt further testified that in February 2004, she indicated to DSS that she was planning to move from grandmother's home, but remained unemployed. Aunt testified that she asked DSS if she could "try to get [the children] again." Aunt testified that DSS responded that she would not likely be a candidate for custody of the children because she "was only 18," was "just moving out" of her mother's home, and "didn't have a job."

In contrast, a DSS worker testified that aunt never indicated that she was interested in having the children placed with her when she lived at her mother's home. The DSS worker testified that in response to DSS's specific inquiry, aunt said she was not able to take the children as she was living at her mother's home. In March 2004, when a DSS worker discussed with grandmother whether she could assume custody, the grandmother indicated that she could not. After DSS filed foster care plans and petitions to terminate mother's parental rights, a DSS worker again inquired as to whether aunt was in a position to assume custody of her sister's children. Aunt responded that she could not.

It was uncontroverted that aunt presented herself as a placement option for the children at the circuit court hearing. At that hearing, she also testified she had been employed for four months and was living with her boyfriend where she had been residing for less than six months.

---

[1] At the time of the circuit court hearing, mother was incarcerated in Florida on a probation violation after having been arrested for a third time in June 2004 on drug charges.

On cross-examination, aunt did not affirmatively answer whether she was willing to assume custody of the children until they reached the age of majority.

After hearing the parties' conflicting evidence about their prior conversations and considering aunt's situation as presented at the hearing, the trial court held that placement with aunt would not be appropriate and ordered that mother's residual parental rights be terminated.

## II. ANALYSIS

On appeal, we view the evidence "in the light most favorable to the prevailing party below and its evidence is afforded all reasonable inferences fairly deducible therefrom." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (citation omitted). DSS "has an affirmative duty to investigate all reasonable options for placement with immediate relatives" before the termination of parental rights. Sauer v. Franklin County Dep't of Soc. Servs., 18 Va. App. 769, 771, 446 S.E.2d 640, 641 (1994); see Hawthorne v. Smyth County Dep't of Soc. Servs., 33 Va. App. 130, 139-40, 531 S.E.2d 639, 644 (2000).

Appellant argues that DSS had a duty to investigate aunt to determine whether she would be an appropriate placement for the children and asserts that the trial court erred in holding that DSS satisfied its burden. The duty to investigate is a rule of reason dependent upon the particular facts and circumstances of each individual case. "As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal." Brown v. Brown, 30 Va. App. 532, 538, 518 S.E.2d 336, 338 (1999).

Appellant contends that initially aunt indicated to DSS that she wanted to be considered as a placement option for the children in January and February 2004, and DSS had a duty to investigate aunt at those times. DSS asserts that aunt, until the time of the circuit court hearing, was always unwilling to be considered as a placement option. In fact, DSS asked aunt about assuming custody of the children again in August 2004, and aunt declined. Other than aunt's

testimony at trial, no evidence in the record proves that aunt told DSS that she was interested in being considered as a placement option at any other time prior to trial. The trial court found the DSS worker's testimony credible on this issue and rejected aunt's testimony. "[T]he credibility of witnesses and the weight to be accorded their testimony is a matter exclusively within the province of the trier of fact." Yopp v. Hodges, 43 Va. App. 427, 439, 598 S.E.2d 760, 766 (2004). "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991) (citation omitted).

Furthermore, at oral argument before this Court, mother's counsel agreed that, viewed in the light most favorable to DSS, the prevailing party, the evidence showed that until the time of the circuit court hearing, aunt was unwilling to assume custody. When we review the evidence in this light, aunt was certainly not a *reasonable* placement option under the Sauer standard because she had always refused to assume custody until the hearing date.[2] Accordingly, DSS had no obligation to further investigate aunt as a placement option prior to terminating parental rights because she was unwilling, prior to the time of the circuit court hearing, to assume custody. See Logan, 13 Va. App. at 132, 409 S.E.2d at 465.

In the alternative, mother argues that the trial court did not give adequate consideration, as required by Code § 16.1-283(A), to aunt as an appropriate placement option. Code § 16.1-283(A) requires that the court "give *a consideration* to granting custody to relatives of the

---

[2] In contradistinction, in Logan, Hawthorne, and Brown v. Spotsylvania Dep't. of Soc. Servs., 43 Va. App. 205, 597 S.E.2d 214 (2004), this Court ruled that DSS, in fact, had a duty to investigate the relative in question, and had not done so prior to the hearing; but, then ruled that DSS's failure to investigate was harmless because the trial court received sufficient evidence at the hearing to determine that the relative was unwilling or that placement with the relative was not appropriate. In the case at hand, DSS had no duty to further investigate prior to the circuit court hearing because aunt indicated she was unwilling to assume custody prior to that hearing.

child" prior to the termination of residual parental rights and placement of the child in DSS's custody. Code § 16.1-283(A) (emphasis added); see Brown, 43 Va. App. at 217, 597 S.E.2d at 220; Hawthorne, 33 Va. App. at 139, 531 S.E.2d at 644; Sauer, 18 Va. App. at 771, 446 S.E.2d at 641; Logan, 13 Va. App. at 131, 409 S.E.2d at 464.

Aunt testified at the circuit court hearing as to her "'suitability and willingness'" to assume custody. Brown, 43 Va. App. at 218, 597 S.E.2d at 220 (quoting Hawthorne, 33 Va. App. at 139, 531 S.E.2d at 644). The trial court heard evidence that, as of the trial date, aunt was nineteen years old; had only been living on her own for approximately twelve months and that during that time, aunt had moved two times; had been living in her most recent home for less than six months; had only been employed for four months; and, was living with her boyfriend who did not appear at the hearing. The trial court also heard extensive evidence about the special needs of the children. Furthermore, on cross-examination, aunt failed to affirmatively answer the question whether she was willing to assume custody of the children until they reached the age of majority or until mother "gets herself together." Aunt responded that she was "keeping her options open." "Thus, as required by statute, the trial court was presented with evidence for its consideration as to the suitability of placing [the children] with [aunt] before it ordered the termination of appellant['s] parental rights." Hawthorne, 33 Va. App. at 139, 531 S.E.2d at 644. The court made a specific finding that aunt was "unable to provide a long-term, appropriate home free from further abuse and neglect" and, therefore, rejected aunt as a suitable appropriate placement. Clearly, at the hearing, the court gave *a consideration* to aunt as a potential custodian. See Code § 16.1-283(A).

### III. CONCLUSION

Accordingly, we hold that, prior to the circuit court hearing, DSS had no duty to further investigate aunt as a placement option in light of aunt's position that she was unwilling to

assume custody prior to that hearing.  Furthermore, we hold that, at trial, the court gave

consideration to aunt as a placement option in accordance with the mandate of Code

§ 16.1-283(A).  Accordingly, we affirm the judgment of the trial court.

<u>Affirmed.</u>