COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Petty and Senior Judge Willis
Argued by teleconference


KARMEN SYLVIA

MEMORANDUM OPINION* BY
v.        Record No. 1557-06-1                    JUDGE ROBERT P. FRANK
                                                          MARCH 20, 2007
HAMPTON DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Marc Jacobson, Judge Designate

Charles E. Haden (Fred C. Hardwick, II; Eusner & Hardwick, P.C.,
on brief), for appellant.

Rachel Allen, Assistant City Attorney; Tonya Henderson-Stith,
Guardian *ad litem* for the minor child (Michael King, Guardian *ad
litem* for appellant; City of Hampton Attorney's Office; McDermott,
Roe & Walter, on brief), for appellee.[1]


        The residual parental rights of Karmen Sylvia, appellant, were terminated by order of the

Circuit Court for the City of Hampton under Code § 16.1-283(C)(2).  On appeal, she contends the

trial court erred in determining the evidence was sufficient (1) to find the child, S.M., abused and

neglected, and (2) to terminate her parental rights.[2]  For the reasons stated, we affirm the judgment

of the trial court.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Michael King was appointed by the Hampton Circuit Court on March 16, 2006, as
Guardian *ad litem* for appellant.  On December 19, 2006, this Court removed Michael King as
Guardian *ad litem* for appellant.

        [2] Appellant also challenges the trial court's companion order approving the Hampton
Department of Social Services (DSS) foster care plan's goal of adoption.  "Our decision to affirm
the termination order necessarily subsumes this aspect of [her] appeal because a preponderance-
of-the-evidence standard governs judicial modifications of foster care plans."  Toms v. Hanover
Dep't of Soc. Servs., 46 Va. App. 257, 265 n.3, 616 S.E.2d 765, 769 n.3 (2005); see Padilla v.
Norfolk Div. of Soc. Servs., 22 Va. App. 643, 645, 472 S.E.2d 648, 649 (1996).  In affirming the

BACKGROUND[3]

S.M. was born June 13, 2005, at a hospital in Hampton. At the hospital, appellant had difficulty caring for S.M. When Michelle Gaines-Mitchell, a registered nurse, asked if appellant had fed S.M., appellant would respond only by "saying that the baby was precious and cute." On one occasion, Gaines-Mitchell observed appellant feeding S.M. S.M. began gagging, but appellant did not remove the bottle from the baby's mouth, requiring Gaines-Mitchell to intervene. After this incident, S.M.'s pediatrician indicated she did not want the baby to remain in the room with appellant. The child was taken to the nursery where appellant's interaction with S.M. could be monitored. While S.M. was in the nursery, appellant would not feed her, despite being asked to do so by the nurses.

Belinda Gastons, a licensed clinical social worker at the hospital, had received an alert from the Newport News Department of Social Services indicating they had removed another of appellant's children for neglect.[4] Gastons interviewed appellant on June 14. Appellant did not have a car seat, a crib, formula or diapers for the child. Gastons discovered that appellant had trouble understanding instructions from the nurse. At that time, Gastons contacted the Hampton Department of Social Services (DSS).

---

trial court's termination of appellant's parental rights, we find that the evidence presented by Hampton DSS satisfied the more rigorous "clear and convincing evidence" standard.

[3] On May 24, 2006, the Hampton Circuit Court heard appellant's appeal of the following three rulings of the Hampton Juvenile & Domestic Relations District Court: (1) the August 23, 2005 order finding S.M. abused and neglected by appellant, (2) the February 7, 2006 order changing the foster care plan goal from "return to parent" to "adoption," and (3) the April 4, 2006 order terminating appellant's residual parental rights. The facts recited in this opinion derive from the testimony adduced at the May 24, 2006 hearing in Hampton Circuit Court.

[4] By order of the Newport News Juvenile & Domestic Relations District Court, entered May 29, 2003, S.J. was found to be abused and neglected by virtue of appellant's mental incapacity. The child's custody was awarded to Newport News Department of Social Services. Newport News Department of Social Services was aware of appellant's pregnancy with S.M., and issued an alert to all nearby hospitals.

Janice Norton, a Hampton DSS worker, met with appellant. When Norton asked how frequently a baby needed to be fed, appellant said that a baby should be fed three times a day. Norton noticed appellant did not interact with S.M. Norton had also received information from Newport News Department of Social Services regarding the removal of S.J. from appellant's care. This information indicated that appellant "had not been cooperative with previous services" offered in relation to S.J. and that appellant had been diagnosed with schizophrenia, paranoid type, with borderline intellectual functioning. Norton also was aware of prior acts of domestic violence involving appellant's husband. Norton expressed concern that appellant would not be able to provide for the basic care and safety of S.M., based on the problems encountered by appellant in the hospital as well as on the information Norton received about appellant's care of S.J.

Appellant was not allowed to take S.M. home from the hospital. S.M. was taken into custody by Hampton DSS. On August 23, 2005, the Hampton Juvenile & Domestic Relations District Court found S.M. to be abused and neglected, awarded custody to Hampton DSS, and approved a foster care plan with the goal of "return to parent or relative."

The foster care plan approved by the court required appellant, *inter alia*, (1) to obtain and maintain suitable housing, (2) to complete and follow recommendations of various service providers, (3) to maintain regular visitation, (4) to participate in medication management, and (5) to demonstrate an ability to provide a safe and stable living environment for the child.

Appellant, as required by the initial foster care plan, maintained contact with DSS and obtained housing, although the house "was not appropriate for [S.M.]." Appellant completed the parental capacity evaluation on July 26, 2005. Appellant completed most of the recommendations of that evaluation, but she missed some individual therapy appointments. Appellant maintained visitation with the child.

Dr. Nadia Boyd, a licensed clinical psychologist, testified that during the evaluation process, appellant had difficulty understanding questions. The evaluation revealed appellant's I.Q. to be 69, "which placed her in the extremely low range of intellectual functioning," or mild mental retardation. At this level, appellant would need assistance to live independently. Her score on Independent Living Skills placed her "in the very low range . . . of adoptive living skills" and "in the impaired range regarding accessing medical help quickly and recognizing health risks." Dr. Boyd indicated appellant would have difficulty in assessing risks to the child.

Dr. Cathy Tirrell, a licensed clinical psychologist, performed a parental capacity evaluation on appellant. Appellant appeared "to have a very poor insight as far as the factors that led to the removal of her children . . . ." Appellant told Dr. Tirrell the devil had inserted negative thoughts in her mind. Dr. Tirrell confirmed appellant's diagnosis of paranoid schizophrenia and further diagnosed appellant with a depressive disorder.

Dr. Tirrell testified appellant has shown "significant deficits in her understanding of child health care, nutrition and safety principles." Appellant did not understand child development and growth, and a child's relationship with parents. Dr. Tirrell indicated that despite the fact that appellant completed parenting classes, she was unable to absorb the information and to act on that information. She would not recommend S.M. be returned to appellant.

Canandra Cooke, a Hampton DSS worker, testified as to why the "return to parent" goal was changed to adoption.[5] Cooke determined that, "given six more months[,] they would still be in the same position that they are current[ly] . . . ." Of particular concern was appellant's inability to tell time, which would imperil the child's need to be timely fed and timely given medication. When the worker advised appellant of the proposed change in goal, appellant began

---

[5] No relative was prepared to assume the long term care of S.M.

to discuss the child's college education, a response unrelated to the topic. Appellant was unable to "grasp" the situation.

The trial court found that S.M. was abused and neglected by virtue of appellant's behavior in the hospital and that the change in goal to adoption was supported by the evidence. The trial court further opined that clear and convincing evidence supported a finding that termination was in the best interests of S.M. and that the requirements of Code § 16.1-283(C)(2) had been satisfied by clear and convincing evidence.

This appeal follows.

## ANALYSIS

When addressing matters concerning the custody and care of a child, this Court's paramount consideration is the child's best interests. Toombs v. Lynchburg Div. of Soc. Servs., 223 Va. 225, 230, 288 S.E.2d 405, 407-08 (1982). The trial court is vested with broad discretion in making decisions "necessary to guard and to foster a child's best interests." Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990). On appeal, we presume that the trial court thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests. Id. at 329, 387 S.E.2d at 796.

Within this framework, we review the evidence in the light most favorable to the prevailing party below, Hampton DSS. Schoenwetter v. Schoenwetter, 8 Va. App. 601, 605, 383 S.E.2d 28, 30 (1989). We will not disturb a trial court's factual findings on appeal unless plainly wrong or without evidence to support them. Brown v. Spotsylvania Dep't of Soc. Servs., 43 Va. App. 205, 211, 597 S.E.2d 214, 217 (2004). Where the record contains credible evidence in support of the findings made by the trial court, we may not retry the facts or substitute our view of the facts for those of the trial court. Ferguson v. Stafford County Dep't of Soc. Servs., 14 Va. App. 333, 336, 417 S.E.2d 1, 4 (1992). However, "[c]onclusions unsupported by facts are insufficient to sever for

all time the legal connection between parent and child." Ward v. Faw, 219 Va. 1120, 1125, 253 S.E.2d 658, 662 (1979).

## I. ABUSE AND NEGLECT

Appellant first contends the evidence was insufficient to prove S.M. was abused and neglected. Specifically, she argues that there was no evidence that appellant's actions, or her cognitive impairment, impacted the child so as to cause a substantial risk of impairment of bodily or mental functions. The evidence belies this argument.

Code § 16.1-228 defines an "abused and neglected child" as any child:

> 1. Whose parents or other person responsible for his care creates or inflicts, threatens to create or inflict, or allows to be created or inflicted upon such child a physical or mental injury by other than accidental means, or creates a substantial risk of death, disfigurement or impairment of bodily or mental functions . . . .

> 2. Whose parents or other person responsible for his care neglects or refuses to provide care necessary for his health . . . .

"[T]he statutory definitions of an abused or neglected child do not require proof of actual harm or impairment having been experienced by the child. The term 'substantial risk' speaks *in futuro* . . . ." Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1183, 409 S.E.2d 16, 19 (1991). A child need not "suffer an actual injury from the behavior of his or her parent before receiving the Commonwealth's protection." Jackson v. W., 14 Va. App. 391, 402, 419 S.E.2d 385, 391 (1992).

Preponderance of the evidence standard is an appropriate standard for an abuse and neglect proceeding. Wright v. Arlington County Dep't of Soc. Servs., 9 Va. App. 411, 414-15, 388 S.E.2d 477, 479 (1990). "The burden of showing something by a 'preponderance of the evidence[]' . . . 'simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence . . . .'" Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers

Pension Trust for S. Cal., 508 U.S. 602, 622 (1993) (quoting In re Winship, 397 U.S. 358, 371-72 (1970) (Harlan, J., concurring)).

The record contains credible evidence that S.M. was abused and neglected. Appellant was not prepared to care for the child at home. At the time of S.M.'s birth, appellant had no car seat, diapers, crib or formula. Because of her mental retardation and mental health issues, appellant did not understand how to feed an infant or the frequency of feedings. She had difficulty following instructions. Further, another child had been removed from appellant's custody due to abuse and neglect. Thus, a number of risk factors were present that "create[d] a substantial risk of . . . impairment of [S.M.'s] bodily or mental functions."

## II. TERMINATION OF PARENTAL RIGHTS

Appellant argues the evidence was not sufficient to prove, by clear and convincing evidence, that termination was in S.M.'s best interests or that the requirements of Code § 16.1-283(C)(2) were proven. Appellant argues she was not given sufficient time to remedy the conditions that brought the child into foster care, nor were reasonable and appropriate services provided to her. She also claims the evidence did not establish that she was either unwilling or unable to remedy the conditions.

Code § 16.1-283(C) speaks in the conjunctive. The court must find, upon clear and convincing evidence, (1) that termination is in the best interests of the child, and (2) that

> [t]he parent or parents, without good cause, have been unwilling or
> unable within a reasonable period of time not to exceed twelve
> months from the date the child was placed in foster care to remedy
> substantially the conditions which led to or required continuation
> of the child's foster care placement, notwithstanding the
> reasonable and appropriate efforts of social, medical, mental health
> or other rehabilitative agencies to such end. . . .

Code § 16.1-283(C)(2).

"The twelve-month time limit established by Code § 16.1-283(C)(2) was designed to prevent an indeterminate state of foster care 'drift' and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement." L.G. v. Amherst County Dep't of Soc. Servs., 41 Va. App. 51, 56, 581 S.E.2d 886, 889 (2003).

> The legislation established a reasonably presumptive time frame of twelve months for parents to receive rehabilitative services to enable them to correct the conditions that led to foster care placement. . . . If the parent fails to substantially remedy those conditions within twelve months the court may act to prevent the child from lingering in foster care.

Id. at 57, 581 S.E.2d at 889.

The record contains credible evidence to support the trial court's finding that termination is in the best interests of S.M. and that the requirements of Code § 16.1-283(C)(2) have been proven.

Appellant's parental rights were terminated because of appellant's lack of progress in remedying the circumstances that led to the child's initial removal from her care. While she completed most of the DSS recommendations, she still did not have the cognitive ability to care for the child. She could not tell time, thus imperiling the child's need to be fed and timely given medication. Dr. Boyd testified appellant would need assistance for independent living. She would have difficulty assessing risks to the child. Dr. Tirrell opined appellant had "very poor insight as far as the factors that led to the removal of her children . . . ." Appellant had "significant defects in her understanding of child health care, nutrition and safety principles." Despite the fact appellant completed parenting classes, she was unable to absorb the information and act upon that information.

While appellant argues she was not given sufficient time to remedy the conditions that brought her daughter into foster care, the evidence clearly proves that additional time would not remedy appellant's cognitive functioning nor her inability to ensure the health, safety and

well-being of the child. It is particularly noteworthy that another child had been removed from appellant's care and custody in 2003 because appellant was unable to meet that child's needs. See Jenkins, 12 Va. App. at 1186, 409 S.E.2d at 21 (holding that "evidence of the termination of rights as to the other children" was relevant to determining whether mother's parenting abilities "created a substantial risk of impairment of bodily or mental function" to the child in question). "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming [her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Appellant maintains the department did not comply with the mandate of Code § 16.1-283(C)(2) by not providing appellant with reasonable and appropriate services to assist her.

Whether or not Hampton DSS pursued "reasonable efforts" to assist appellant is a factual determination to be made by the fact finder. Ferguson, 14 Va. App. at 338, 417 S.E.2d at 9-10. "'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case." Id. at 338, 417 S.E.2d at 9. "Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Id. at 338, 417 S.E.2d at 10.

Again, it is clear that while appellant complied with the requirements of the initial foster care plan, she was unable to absorb or utilize that information. Nothing in the record suggests continued services would alleviate her deficits. The testimony before the trial court was to the contrary. Appellant did not understand child development and growth and had substantial deficits in her understanding of child health care, nutrition and safety principles. See Jenkins, 12 Va. App. at 1183, 409 S.E.2d at 19 (finding that, despite the efforts made by the mother to meet the goals set out by the foster care plan, the mother "had not progressed to a point where she was capable of functioning as an independent parent").

Under the facts of this case, we cannot say the trial court erred in finding the child was abused and neglected, and the trial court did not err in terminating appellant's parental rights.

Affirmed.