COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, McCullough and Senior Judge Bumgardner


KEVIN LOGAN, JR.

v.       Record No. 2571-11-4

FAIRFAX COUNTY DEPARTMENT
  OF FAMILY SERVICES                                    MEMORANDUM OPINION*
                                                             PER CURIAM
JENNIFER LOGAN                                          SEPTEMBER 11, 2012

v.       Record No. 2608-11-4

FAIRFAX COUNTY DEPARTMENT
  OF FAMILY SERVICES


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                             Bruce D. White, Judge

              (Harold N. Ward, Jr., on brief), for appellant Kevin Logan, Jr.

              (Neal David Olesker, on brief), for appellant Jennifer Logan.

              (David P. Bobzien, County Attorney; Peter D. Andreoli, Jr., Deputy
              County Attorney; Donna R. Banks, Assistant County Attorney;
              Shirley A. Norman-Taylor, Guardian *ad litem* for the minor children,
              on brief), for appellee.


        Kevin Logan, Jr., father, and Jennifer Logan, mother, appellants herein, appeal the orders of

termination of their residual parental rights to their five children, Ki. L., Ke. L., T.L., Kir. L., and

Ka. L.  Appellants present the same arguments and joint appendix and, therefore, the cases were

consolidated.  Appellants argue the trial court erred by (1) finding mother and father failed to

respond to or follow through with appropriate, reasonable, rehabilitative efforts by the Department

to reduce, eliminate or prevent the neglect or abuse of the children; (2) finding the Department had

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

provided services to appellants; (3) finding appellants did not comply with court-ordered services and evaluations; (4) finding appellants failed, without good cause, to maintain contact with and substantially plan for the children's future; and (5) finding it was not in the best interests of the children to be placed with their great grandmother and/or aunt. Upon review of the record and briefs of the parties, we conclude that these appeals are without merit. Accordingly, we summarily affirm the decisions of the trial court. Rule 5A:27.

> When addressing matters concerning the custody and care of a child, this Court's paramount consideration is the child's best interests. On appeal, we presume that the trial court thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests. The trial court is vested with broad discretion in making decisions "necessary to guard and to foster a child's best interests." We will not disturb a trial court's factual findings on appeal unless plainly wrong or without evidence to support them.

Brown v. Spotsylvania Dep't of Soc. Svcs., 43 Va. App. 205, 212, 597 S.E.2d 214, 217 (2004) (citations omitted). "Furthermore, the evidence is viewed in the light most favorable to the prevailing party below and its evidence is afforded all reasonable inferences fairly deducible therefrom." Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (citation omitted).

The evidence adduced at trial showed that appellants' five children were removed from their care in May of 2010 for chronic neglect, particularly related to their poor hygiene and excessive absences from school. In May 2010 and July 2010, in removal proceedings, mother was ordered by the juvenile and domestic relations district court (JDR court), later affirmed in circuit court on appeal, to submit to a psychological examination, parenting classes, and a parent-child assessment. In the same proceedings, the JDR court, and later the circuit court, ordered father to submit to a neuropsychological evaluation, alcohol and drug services evaluation, parenting classes, and a child-parent assessment.

Mother failed to take the psychological examination, cancelling two appointments and not rescheduling for another date. Mother testified that although she was given a copy of the foster care plan, she did not read it due to time constraints. Both parents attended only two parenting classes. Father failed to appear at both scheduled appointments for the neuropsychological evaluation and made no efforts to arrange for the alcohol and drug services evaluation.

Appellants attended four supervised visitations with their children, arriving half an hour late for their first visit. All four visits were chaotic. Father was angry and threatening at each visitation. Father interrogated the children about the foster parents and their grandparents. On one visit, he threatened the foster parents and followed them to the parking lot, despite being told not to do so. Father made the end of the visitations difficult, which made the children cry. Father was overheard to tell the children, "why are you crying, you wanted a new mom and dad, now you've got it." Father made threats to the case workers and the maternal grandparents who were working with the Department. After the fourth visitation, due to father's inappropriate and threatening behavior, he was barred from attending any additional sessions. The Department communicated to mother that she could continue with the sessions without her husband. The Department presented evidence that mother told them she would not attend any more sessions without her husband. Mother testified she only stated that she would miss the next visitation because she needed to talk with her attorney. Mother claimed she appeared for what she thought would be the next regularly scheduled visitation, but the case worker and children never came. Mother later received a letter stating her visitation had also been suspended. The letter indicated the decision would be reconsidered after completion of the evaluations. The parents had no contact with their children from the last June 2010 visitation through the termination proceeding in circuit court in December of 2011. When asked why she did not attempt to see her children or make efforts to comply with the services and evaluations, mother stated she did not want to "badger" anyone and she thought the Department would advise her what

she should do. Father testified his residual rights should not be terminated because he did not believe there had been any reason to take the children out of the home.

The maternal grandparents worked with the Department in an attempt to place the children in their home. However, the children were doing poorly in their care. The home was chaotic and smelled of urine and feces. The Department spoke with other paternal relatives, though none followed through with the requirements necessary to secure placement in their homes. The Department presented evidence that the great-grandmother and aunt indicated their desire to care for the children in May 2010. However, the Department did not pursue placement with these relatives because they did not present a plan for caring for the children, at that time they would only take one of the children, not all, and they failed to follow through with the necessary requirements, such as background checks and home studies. The Department gave them contact information, but they had no record of these relatives contacting them again until August 2, 2011, more than a year after foster-care placement, and after termination proceedings were filed.

The great-grandmother and aunt testified at trial they would be willing and able to care for all the children. The aunt, who is legally blind, lived with the parents, and mother was employed as the aunt's care-giver. The great-grandmother lives with her 93-year-old husband in a three-bedroom home, and planned to put the four girls in one room and the boy in the other. Notably, neither of the relatives was aware of the conditions that prompted the children's removal from the home.

All five children were receiving counseling services. The counselors testified the children were very "resilient" and all were improving emotionally, physically, and academically while in foster care. One child reported allegations that father had sexually abused her and she was doing well in her therapy and her behavior was markedly improved. The Department's evidence as a

whole demonstrated that the children were thriving and achieving appropriate developmental and social goals in foster care.

In appellants' first and second assignments of error, appellants contend the trial court erred in finding that the Department offered, and they did not, without good cause, respond to or follow through with, the appropriate, reasonable, rehabilitative efforts made by the Department to reduce, eliminate or prevent the neglect and abuse of the children, as required by Code § 16.1-283(B) and (C). Both parents initially complied with visitation and claimed they were precluded from following through with the services and evaluations by the Department.

The trial court resolved the conflicts in evidence in favor of the Department, whose witnesses the trial court found to be credible. Thus, in the light most favorable to the Department, the evidence established that mother advised the Department she would not be attending the sessions without her husband. Further, mother cancelled two appointments for the court-ordered psychological evaluation and did not attempt to reschedule for another date. Mother did not follow through with the Department to ensure these services and requirements were completed. The Department's witnesses testified they stressed directly to the parents and through their attorneys, the importance of complying and working with the Department if they wanted the children to return home. Mother did not take any steps to ensure visitation with her children or attempt to comply with the court order for over a year and a half, asserting she did not want to bother the Department and thought the Department would contact her.

Similarly, father failed to appear for the two scheduled neuropsychological evaluations and did not attempt to follow up with the Department to reschedule. Father took no steps to complete the alcohol and drug services evaluation. Although father claimed he bought and used a home drug testing kit, such actions did not satisfy the court's order for evaluation. Father did not respond to the

Department's letters, phone calls, or other attempts to contact him to get into compliance with the court-ordered evaluations or services.

"The Department is not required 'to force its services upon an unwilling or disinterested parent.'" Logan, 13 Va. App. at 130, 409 S.E.2d at 463-64 (citation omitted). The trial court reasonably concluded from the evidence that both parents were unwilling or unable to respond to or follow through with the rehabilitative efforts the Department offered them. From May 2010 until December 2011, neither parent cooperated with the Department's efforts, complied with any of the court-ordered evaluations, minimally participated in the offered services, and did little to nothing to retain the children. Therefore, the trial court's findings were not plainly wrong and the evidence supported the finding that the Department offered services and appellants failed to respond to or follow through with the efforts to reduce or prevent further neglect of the children, pursuant to Code § 16.1-283(B) and (C).

Appellants next argue the trial court erred by finding they had no intention of complying with the court-ordered services and evaluations. As stated above, mother cancelled appointments for the psychological evaluation and did not make any effort to reschedule and only attended two parenting classes. Mother made no attempts to initiate contact with her children from June 2010 to December 2011. When given the opportunity to continue visitation with the children after father had been barred from visitation, mother notified the Department she would not attend without her husband. Although mother testified she once went to the regular meeting place after the visits had been terminated, she took no additional steps to comply with the court orders or the Department's requirements. Mother never took the time to read the foster care plan. Mother did not send birthday cards or follow up about the children's health and schooling. Her only explanation was that she did not want to harass the Department and she felt the Department would let her know what she needed to do.

Father only attended two parenting classes. He failed to appear for two scheduled appointments for the neuropsychological evaluation and did not cooperate with the Department to reschedule the evaluation. He also failed to complete the alcohol and drug services evaluation. Father clearly expressed his "disdain, anger, and disrespect," as found by the trial court, for the Department.

The Department personally and by letter and attorney communication explained the importance and necessity of completing the services and evaluations as the only way to have contact with the children and to return them home. The record reflects neither parent availed themselves of the services and would not cooperate with the Department. The trial court reasonably concluded from the evidence that mother and father were unwilling and disinterested parents who had no intention of complying with the court-ordered services and evaluations. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his or [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). Therefore, the trial court was not plainly wrong and the evidence supported the factual findings, which this Court will not disturb on appeal.

Appellants maintain the trial court erred by finding that they, without good cause, did not maintain contact with and substantially plan for the children's future, as required by Code § 16.1-283(C)(1). The evidence was clear that both parents made no effort to maintain contact with the children for over one and one-half years. Although they presented evidence that they were employed and were then living in a three-bedroom townhome, they made no other plans for the children's future. For example, mother did not know in what schools the children could be enrolled. Additionally, while appellants presented evidence that the children's great-grandmother or aunt could also care for the children, like the parents, neither of these relatives took the necessary steps to

work with the Department to ensure such placement. When the great-grandmother called the Department, in August of 2011, after termination proceedings were begun, her voicemail message only asked to visit with the children. Appellants presented the Department with no clear plan for the children's future, and they did not maintain contact with the children for over eighteen months. The trial court had the opportunity to observe the great-grandmother and aunt testify, and it did not find them to be suitable for the children's placement. The evidence supports the trial court's finding that appellants did not maintain contact with the children, without good cause, and they did not substantially plan for the children's future. Therefore, the trial court did not err by terminating appellants' residual parental rights pursuant to Code § 16.1-283(C).

Finally, appellants assert the trial court erred by finding that it was not in the children's best interests to be placed with the great-grandmother or the aunt with whom they lived.

> Code § 16.1-283(A) provides that, in a termination of parental rights case, "the court shall give a consideration to granting custody to relatives of the child, including grandparents." "Before the court grants custody of a child, under the provisions of Code § 16.1-283(A) the Department has a duty to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options." Nothing in the statute or case law suggests that [the Department] has an affirmative duty to conduct a home study. That being said, [the Department] is mandated "to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options." We find that [the Department] met that requirement.

Brown, 43 Va. App. at 218, 597 S.E.2d at 220 (citations omitted).

Neither the great-grandmother nor the aunt followed through with the Department to take the necessary steps to ensure placement in their homes. Although both relatives indicated their desire to take the children in May 2010, both indicated an ability to take only one or some of the children at that time. Additionally, when told of the requirements, such as home studies,

- 8 -

fingerprints, and background checks, both seemed less interested in pursuing placement. Both women were given contact information to pursue the process, but neither followed through with the Department. Both claimed to have called the Department several times, however, the Department's evidence was that they did not contact the case workers. Neither woman sought visitation with the children during the children's time in foster care until August 2011, after the termination petitions were filed. At that time, the great-grandmother left a message stating only that she would like to visit the children, not that she was willing or able to care for the children. The Department presented evidence that the five children were thriving in foster care and were markedly improved in their health, academics, and mental health. The trial court found the Department's evidence to be credible, and we will not disturb that finding. Therefore, the trial court did not err by finding it was not in the best interests of the children to be placed with the relatives.

Accordingly, the trial court did not err by terminating the mother's and father's residual parental rights to all five children. For the foregoing reasons, the trial court's ruling is affirmed.

<u>Affirmed.</u>