COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Huff and Senior Judge Annunziata


LISA MICHELLE WHITMER

v.     Record No. 0882-20-2

SPOTSYLVANIA COUNTY DEPARTMENT
  OF SOCIAL SERVICES                                   MEMORANDUM OPINION*
                                                            PER CURIAM
ROBERT ALLEN WHITMER                                      MARCH 30, 2021

v.     Record No. 0903-20-2

SPOTSYLVANIA COUNTY DEPARTMENT
  OF SOCIAL SERVICES


              FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
                            Ricardo Rigual, Judge

        (Joseph M. Kirchgessner; Woehrle Dahlberg Yao, PLLC, on brief),
        for appellant Lisa Michelle Whitmer.  Appellant submitting on
        brief.

        (Gary D. Godman; Williams Stone Carpenter Buczek, PC, on
        brief), for appellant Robert Allen Whitmer.  Appellant submitting
        on brief.

        (Robin N. Krueger; Carolyn S. Seklii, Guardian *ad litem* for the
        minor children; Sullivan & Seklii, PLC, on briefs), for appellee.
        Appellee and Guardian *ad litem* submitting on briefs.


        Lisa Michelle Whitmer (mother) and Robert Allen Whitmer (father) appeal the circuit

court's orders terminating their parental rights to four of their children.  Mother and father argue that

the circuit court "erred in finding reasonable and appropriate efforts were made by the [Spotsylvania

County] Department of Social Services when ordering termination" under Code § 16.1-283(B) and

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

(C)(2). Mother and father also assert that the circuit court erred in finding that termination of their parental rights was in the children's best interests. Furthermore, mother and father contend that the circuit court "erred in refusing to transfer custody" of two of their children to their adult child, who was "a willing and able relative." Upon reviewing the record and briefs of the parties, we conclude that the circuit court did not err. Accordingly, we affirm the decision of the circuit court.

## BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Mother and father are the biological parents to five children, four of whom are the subjects of these appeals.[2] The Spotsylvania County Department of Social Services (the Department) first became involved with the family in 2008 after there was a founded disposition against father for physical neglect. In February 2015, father attempted to commit suicide by driving his vehicle into a tree. Mother and father were intoxicated at the time. The Spotsylvania County Juvenile and Domestic Relations District Court (the JDR court) awarded custody of the children, who ranged in age from one to eight years old, to their maternal grandparents, Wanda and Richard Morris.

---

[1] The record in these cases was sealed. Nevertheless, the appeals necessitate unsealing relevant portions of the record to resolve the issues appellants have raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Mother and father's oldest child is an adult.

The parents moved in with the grandparents. Mother consumed alcohol and tested positive for THC and opiates. Mother pleaded guilty to five counts of contributing to the delinquency of a minor. In July 2015, the JDR court issued a child protective order, which prohibited the parents from residing with the maternal grandparents and having any unsupervised contact with the children. The JDR court also found that the children were abused or neglected.

The Department offered substance abuse treatment to mother and father, but they did not attend. The JDR court ordered the parents to attend a parenting class, which they did not complete. The Department provided "a variety of services," including supervised visitation, to the family. Mother and father attended forty-three out of a scheduled 144 visits.

In March 2017, the JDR court renewed the child protective order.[3] In June 2017, the police responded to the maternal grandparents' house and found mother and father alone with the children, in violation of the child protective order. Mother was intoxicated and belligerent, and the children reported that they were afraid of mother.

After the incident with the police, the Department removed the children and placed them in foster care. Mother did not have any further contact with the children. On July 21, 2017, the JDR court adjudicated that the children were at risk of being further abused. Father's visitation with the children ended in September 2017. The Department stopped offering services to mother and father and changed the foster care goal to adoption.

On May 4, 2018, the JDR court entered permanency planning orders approving the foster care goal of adoption. The JDR court's rulings were appealed to the circuit court, which also approved the foster care goal of adoption after conducting a *de novo* hearing. Father appealed the circuit court's ruling to this Court. We summarily affirmed the circuit court's ruling. See R.

---

[3] The child protective order expired in March 2019.

<u>Whitmer v. Spotsylvania Cnty. Dep't of Soc. Servs.</u>, Record Nos. 0083-19-2, 0084-19-2, 0085-19-2, and 0086-19-2 (Va. Ct. App. July 23, 2019).

On September 6, 2019, the JDR court terminated mother's and father's parental rights to the four children. On November 27, 2019, the parties appeared before the circuit court.[4] After hearing the evidence and argument, the circuit court issued a letter opinion. The circuit court found that mother and father lived at a motel in Stafford County and hoped to move to a townhome nearby. The circuit court found that mother worked at a gas station and intended to obtain her driver's license after she paid her outstanding fees to the Department of Motor Vehicles. Mother had completed probation and the court-ordered alcohol safety action program (ASAP), substance abuse treatment, and a batterer's intervention program. The circuit court noted that "because each of these programs were completed pursuant to a [c]ourt order, none demonstrate [m]other taking personal initiative to address the roots of the circumstances that led to neglect." In addition, the circuit court found that mother refused "to reflect on her behavior with a critical eye," especially when she asserted that "she had always been a good mother to her children."

The circuit court found that father was employed and claimed to have no problems with substance abuse. The circuit court concluded that like mother, father had not shown that he was committed to resolving the conditions that led to the children's neglect. Although father was seeing a psychiatrist for his mental health, the circuit court found that father had "demonstrated continued willingness to minimize and excuse the conduct which had created the need for foster care."

---

[4] The transcript of the circuit court hearing was filed late on October 26, 2020; therefore, it is not part of the record. Rule 5A:8(a).

The circuit court found that throughout the history of the case, mother and father had "not demonstrated much interest in personally taking custody" of the children. Mother and father reported unsuccessful attempts to contact the Department, but they failed to provide any written correspondence with the Department or requests for services. The circuit court found that the Department offered rehabilitative services to the parents for years, and its efforts were "reasonable" and "appropriate."

At the time of the circuit court hearing, the four minor children ranged in age from six to twelve. The circuit court found that the children had been "coping well" in foster care. The younger two children were placed together in a "stable" foster home, while the older two children were in a "new" foster home. After a "thorough review of the pleadings, counsel's argument, and the law," the circuit court held that the termination of both mother's and father's parental rights was in the children's best interests. The circuit court terminated mother's and father's parental rights under Code § 16.1-283(B) and (C)(2). These appeals followed.

ANALYSIS

*Res judicata and collateral estoppel*

Mother and father challenge the circuit court's ruling terminating their parental rights and finding that their adult child was not an option for relative placement. The Department argues that *res judicata* and collateral estoppel prohibit the parents from making their arguments on appeal. The Department emphasizes that mother did not appeal the permanency planning orders approving the foster care goal of adoption and that although father appealed the permanency planning orders, he did not assign error to the circuit court's ruling that adoption was in the children's best interests. The Department contends that after this Court summarily affirmed the circuit court's ruling regarding the permanency planning orders, *res judicata* and collateral estoppel apply.

"*Res judicata* involves both issue and claim preclusion." Lane v. Bayview Loan Servicing, LLC, 297 Va. 645, 653 (2019) (quoting Funny Guy, LLC v. Lecego, LLC, 293 Va. 135, 142 (2017)). "While claim preclusion bars relitigation of a cause of action, issue preclusion bars relitigation of a factual issue." Id. "Whether a claim or issue is precluded by a prior judgment is a question of law this Court reviews *de novo*." Id.

"Rule 1:6 embodies the common law principle of claim preclusion in Virginia." Id. at 654.

> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, is forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought.

Rule 1:6(a).

The Department argues that mother and father cannot challenge the termination orders because their claims for relief arise out of the "same conduct, transaction or occurrence" as the permanency planning orders. See C. Farrell v. Warren Cnty. Dep't of Soc. Servs., 59 Va. App. 375, 428 (2012) (quoting Rule 1:6). We disagree.

First, we note that the Department had a stricter burden at the termination hearing than it did at the permanency planning hearing. The Department had to present clear and convincing evidence that termination was in the best interests of the children. See D. Farrell v. Warren Cnty. Dep't of Soc. Servs., 59 Va. App. 342, 347 (2012). However, at the permanency planning hearing, it only had to prove that adoption was in the children's best interests by a preponderance of the evidence. See Boatright v. Wise Cnty. Dep't of Soc. Servs., 64 Va. App. 71, 79 (2014); Padilla v. Norfolk Div. of Soc. Servs., 22 Va. App. 643, 645 (1996).

The circuit court previously considered the circumstances as of November 19, 2018, when it heard the evidence and argument regarding the foster care goal of adoption. At the termination hearing, the circuit court considered the circumstances as of November 27, 2019, when it heard the evidence and argument regarding the termination of parental rights. The circuit court's letter opinion details the new evidence it considered and was presented at the termination hearing, such as mother's and father's current circumstances and the children's well-being. In addition, the focus on relative placement at the permanency planning hearing was on the maternal grandmother, but the focus on relative placement at the termination hearing was on the parents' adult child. Therefore, the causes of action were different, and *res judicata*, or claim preclusion, does not apply.

The Department also argues that the parents are estopped from raising their current arguments regarding the termination of their parental rights because they did not ask for the children to be returned to them previously when the foster care goals of adoption were approved, nor did they ask for additional services; therefore, the Department asserts that they cannot raise those issues now. "Issue preclusion, also known as collateral estoppel, precludes 'parties to the first action and their privies' from relitigating 'any issue of fact actually litigated and essential to a valid and final personal judgment in the first action.'" Lane, 297 Va. at 654 (emphasis omitted) (quoting Funny Guy, LLC, 293 Va. at 142).

The circuit court entered the termination orders on June 29, 2020. On March 16, 2020, in response to the COVID-19 global pandemic, the Chief Justice of the Supreme Court of Virginia declared a judicial emergency at the request of the Governor, as authorized by Code § 17.1-330(A), and tolled all case-related deadlines for filings in the district and circuit courts. See Order Declaring A Judicial Emergency In Response to COVID-19 Emergency (Mar. 16, 2020). By orders dated March 27, 2020, April 22, 2020, May 6, 2020, June 1, 2020, and June 22, 2020 (collectively "the Judicial Emergency Orders"), the Chief Justice extended the period of

- 7 -

judicial emergency. The Judicial Emergency Orders provided that case-related deadlines for filings in the district and circuit courts were tolled under Code § 17.1-330(D), for the duration of the orders. See Order Extending Declaration of Judicial Emergency (Mar. 27, 2020); Third Order Extending Declaration of Judicial Emergency (Apr. 22, 2020); Fourth Order Modifying and Extending Declaration of Judicial Emergency (May 6, 2020); Fifth Order Modifying and Extending Declaration of Judicial Emergency (June 1, 2020); Sixth Order Extending Declaration of Judicial Emergency (June 22, 2020).

By order of July 8, 2020, the Chief Justice again extended the Declaration of Judicial Emergency, but ordered that "beginning on July 20, 2020, for cases in the district and circuit courts, there shall be no further tolling of statutes of limitation or other case-related deadlines." Seventh Order Extending Declaration of Judicial Emergency (July 8, 2020). "Deadlines regarding filings made pursuant to Part Five A of the Rules of the Supreme Court of Virginia with the clerk of the circuit court are no longer tolled." Id.

Thus, the sixty-day period within which to file the transcript from the November 27, 2019 circuit court hearing recommenced on July 20, 2020. See id.; Rule 5A:8(a) ("The transcript of any proceeding is a part of the record when it is filed in the office of the clerk of the trial court no later than 60 days after entry of the final judgment."). The transcript was due on September 18, 2020, but it was filed late on October 26, 2020, and is, therefore, not part of the record. Accordingly, we are unable to determine whether the parents were relitigating the same factual issues in the permanency planning hearing and the termination hearing. Thus, we will not consider the Department's arguments regarding collateral estoppel. "In the absence [of a sufficient record], we will not consider the point." Dixon v. Dixon, 71 Va. App. 709, 716 (2020) (quoting Robinson v. Robinson, 50 Va. App. 189, 197 (2007) (alteration in original)).

Mother and father argue that the circuit court "erred in finding reasonable and appropriate efforts were made by the [Spotsylvania County] Department of Social Services when ordering termination" under Code § 16.1-283(B) and (C)(2). Mother and father also assert that the circuit court erred in finding that termination of their parental rights was in the children's best interests.

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

The circuit court terminated mother's and father's parental rights under Code § 16.1-283(B) and (C)(2). Code § 16.1-283(B) states a parent's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

Mother and father argue that the circuit court erred in finding that the Department made reasonable and appropriate efforts to rehabilitate them. Mother and father emphasize that the

Department admitted that it did not provide any services to them after the children were removed in June 2017.

"Code § 16.1-283(B) requires only that the circuit court consider whether rehabilitation services, if any, have been provided to a parent. Nothing in Code § 16.1-283 or the larger statutory scheme requires that such services be provided in all cases as a prerequisite to termination under subsection B." Eaton v. Washington Cnty. Dep't of Soc. Servs., 66 Va. App. 317, 327-28 (2016) (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 268 (2005)). "Subsection B does not create specific time frames, 'nor does it mandate that a public or private agency provide any services to a parent after the child enters foster care.'" Toms, 46 Va. App. at 269 (quoting Kate D. O'Leary, Termination of Parental Rights in Virginia, 17 J. Civ. Litig. 17 (2005)).

This Court's opinion in R. Whitmer, Record Nos. 0083-19-2, 0084-19-2, 0085-19-2, and 0086-19-2, and the circuit court's letter opinion detail the numerous services offered to the family by the Department. The circuit court found that "when given the chance by [the Department] to address the underlying substance abuse," the parents refused, and substance abuse was "a major contributor to the events of June 2017," which caused the children to enter foster care. The circuit court noted that despite the child protective orders, the Department "remained committed to maintaining the relationship between the children and their parents" and offered supervised visitations; however, mother and father attended less than a third of the possible visits. The circuit court concluded that mother and father "failed to demonstrate that they were taking [the Department's] rehabilitative efforts seriously," and their "ambivalence towards the supervised visitations along with the Protective Order violation demonstrated the parents' lack of respect for the rehabilitative process and the gravity of the situation." Both mother and father offered excuses about their past conduct. The record supports the circuit

court's finding that despite all the services offered, mother and father did not substantially remedy the conditions that led to the children's neglect.

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 319 (2013) (quoting Logan, 13 Va. App. at 128). "'[T]here is no simple, mechanical, cut and dried way' to apply the best interests of the child standard." Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 48 (2014) (quoting Peple v. Peple, 5 Va. App. 414, 422 (1988)). "Instead, 'the question must be resolved . . . in light of the facts of each case.'" Id. (quoting Toombs v. Lynchburg Div. of Soc. Servs., 223 Va. 225, 230 (1982)).

At the time of the circuit court hearing, the children had been in foster care for approximately two and a half years. One child had been diagnosed with attention deficit hyperactivity disorder (ADHD) and was "receiving daytime treatment at school to help address behavioral trouble." Another child was diagnosed with ADHD and depression. All the children received therapy "to help them cope with their neglect." Meanwhile, mother and father had made "no serious attempts to regain custody," even after the child protective order expired in March 2019. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett, 62 Va. App. at 322 (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

Based on the record, the circuit court did not err in terminating mother's and father's parental rights under Code § 16.1-283(B) and finding that termination was in the children's best interests.[5]

*Relative placement*

Mother and father contend that the circuit court "erred in refusing to transfer custody" of two of their children to their adult daughter, who was "a willing and able relative."

Before terminating a parent's rights, "the court shall give a consideration to granting custody to a person with a legitimate interest." Code § 16.1-283(A). "This Court has held that this provision obligates [DSS] 'to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options.'" Castillo, 68 Va. App. at 567 (quoting Brown v. Spotsylvania Dep't of Soc. Servs., 43 Va. App. 205, 217 (2004)). Accord Hawthorne v. Smyth Cnty. Dep't of Soc. Servs., 33 Va. App. 130, 136 (2000); Logan, 13 Va. App. at 131.

"Although mandatory, this obligation is limited." Castillo, 68 Va. App. at 567. We have never "suggest[ed] that the Department has a duty in every case to investigate the home of every relative of the children, however remote, as a potential placement." Sauer v. Franklin Cnty. Dep't of Soc. Servs., 18 Va. App. 769, 771 (1994). Instead, our precedent establishes that the

---

[5] "When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds." Kilby v. Culpeper Cnty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1 (2009); see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Because we find that the circuit court did not err in terminating mother's and father's parental rights under Code § 16.1-283(B), we, therefore, do not need to reach the question of whether mother's and father's parental rights should also have been terminated under Code § 16.1-283(C)(2).

statutory prerequisite is satisfied when the relative testifies before the circuit court, so that it may consider the suitability of placing the child with that relative, as compared with other placement options. See Castillo, 68 Va. App. at 568 (trial testimony of "several relatives" and evidence of Department's investigation provided circuit court with "ample evidence" to consider relative placements); Brown, 43 Va. App. at 218 (statute satisfied where grandmother "testified at the hearing and informed the court of her 'suitability and willingness' to take [minor] into her custody); Hawthorne, 33 Va. App. at 139 (statute satisfied where the trial court heard testimony of father's aunt concerning her willingness and suitability for placement before it ordered the termination of his parental rights).

Here, mother's and father's adult daughter testified at the circuit court hearing. Mother and father rely on her testimony, as well as the Department's evidence at trial, to support their argument that the circuit court erred in terminating their parental rights, as opposed to awarding custody of two of their children to their adult daughter. However, as discussed above, the transcript of the circuit court hearing was not timely filed and, therefore, is not part of the record on appeal. Rule 5A:8. We find that the transcript from the circuit court hearing is indispensable to a determination of the parents' third assignment of error on appeal. "If . . . the transcript is indispensable to the determination of the case, then the requirements for making the transcript a part of the record on appeal must be strictly adhered to. This Court has no authority to make exceptions to the filing requirements set out in the Rules." Shiembob v. Shiembob, 55 Va. App. 234, 246 (2009) (quoting Turner v. Commonwealth, 2 Va. App. 96, 99 (1986)); see also Bay v. Commonwealth, 60 Va. App. 520, 528-29 (2012). Mother and father assert that the circuit court erred by refusing to consider their adult daughter as a relative placement for two of their children, but they did not provide this Court with a sufficient record to review their arguments.

"The burden is upon the appellant[s] to provide [the appellate court] with a record which substantiates the claim of error. In the absence [of a sufficient record], we will not consider the point." Dixon, 71 Va. App. at 716 (second and third alterations in original) (quoting Robinson, 50 Va. App. at 197); see also Rule 5A:8(b)(4)(ii). We conclude that a transcript from the circuit court hearing or a written statement of facts in lieu of a transcript from that hearing is indispensable to resolving mother's and father's third assignment of error.

CONCLUSION

For all of the foregoing reasons, the circuit court's ruling is affirmed. However, we find that there are typographical errors in several of the final orders. Specifically, the orders terminating mother's parental rights to the four children and father's parental rights to the youngest child, D.A.W., mistakenly state that the circuit court terminated the parental rights under Code § 16.1-283(C)(1), instead of under Code § 16.1-283(B). In addition, in paragraph three of the order terminating father's parental rights to the youngest child, D.A.W., the order mistakenly states mother's name – as opposed to father's name. We remand the matters to the circuit court for it to correct the typographical errors in these orders.

Affirmed and remanded.