COURT OF APPEALS OF VIRGINIA

Present: Judges Russell, Raphael and Senior Judge Clements

TAMELA MONIQUE TIBBS

v.     Record No. 0288-21-4

FAIRFAX COUNTY DEPARTMENT
 OF FAMILY SERVICES

MEMORANDUM OPINION*
PER CURIAM
NOVEMBER 16, 2021

UNPUBLISHED

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Bruce D. White, Judge

(Kimberly A. Chadwick, on brief), for appellant.  Appellant
submitting on brief.

(May Shallal, Assistant County Attorney; Robin L. Kozin-Angelo,
Guardian *ad litem* for the minor child, on brief), for appellee.
Appellee and Guardian *ad litem* submitting on brief.


Tamela Tibbs (mother) appeals the circuit court's order terminating her parental rights.

Mother argues that the circuit court erred in finding that the evidence was sufficient to support a

termination of her parental rights under Code § 16.1-283(C)(2) and (E)(i).  Specifically, mother

maintains that the trial court erred in terminating her parental rights because the Fairfax County

Department of Family Services (the Department) "failed to provide appropriate, available and

reasonable services designed to remedy the conditions that led to the child's placement or

continuation in foster care."  Mother also argues on appeal that there was no evidence

demonstrating that termination of her parental rights was in the best interests of the child.  Lastly,

mother argues that the Department "did not exhaust alternative, less drastic remedies, such as

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

relative placement." Upon reviewing the record and briefs of the parties, we conclude that the

circuit court did not err. Accordingly, we affirm the decision of the circuit court.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the

evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford

Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of

Hum. Servs., 63 Va. App. 157, 168 (2014)).

Mother and Alex Koiwood (father) are the biological parents to the child who is the subject

of this appeal. Before the child was born, mother and father's parental rights for the child's

biological sister had already been terminated under Code § 16.1-283(C)(2). Due to the case

involving the child's biological sister, and based on a finding that the child was at risk of being

abused or neglected, the Department removed the child from the parents' care shortly after his birth.

In July 2019, when the child was approximately five months old, mother, who was living in

a homeless shelter at the time, underwent a "full psychosocial psychiatric evaluation." During the

evaluation, mother was found to have "problems processing verbal information at a level which

would be expected for others her age . . . [and] are particularly associated with those who have

bipolar disorder." The evaluator also noted that mother had a "long history of difficulties with

emotional volatility and behavioral controls" and that she, herself, was placed in foster care from

ages fourteen to eighteen. In addition, mother's "significant emotional vulnerability and her being

emotionally overwhelmed . . . suggest[ed] a likelihood of an unpredictability of her behavior in the

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

parenting role." Based on his evaluation which spanned over three sessions from July to November 2019, the evaluator diagnosed mother with "bipolar disorder in partial remission." The evaluator noted that over the evaluation period, he noticed an improvement in behavior that was likely due "to the fact that she was taking an injectable psychotropic medication." The evaluator warned, however, that when patients miss a dose of medication, "they can quickly regress in their functioning, become diffuse and disorganized and very rapidly go back to . . . the depths of their mental health diagnosis." Following his evaluation, the evaluator recommended that mother participate in parenting classes, family therapy, individual counseling, and case management support.

The Department then referred mother to intensive case management services with the goal to stabilize her mental health and to "decrease some of [her] anger and aggression." The case-management team recommended substance-abuse treatment and testing, counseling, a "co-occurring disorders group," parenting classes, and a regimen of injectable medications. The case-management team also worked with mother to facilitate access to housing, employment, and other benefits, such as food stamps.

Mother was "very belligerent" and "hostile" towards her treating psychiatrist and case managers. On several occasions in 2019, police had to intervene due to mother's "escalated" behavior and refusal of substance-abuse treatment. Mother was banned from "almost every Department of Family Services' location in the county in 2019" due to her erratic behavior and had to continue her case management services at the Fairfax County courthouse. Mother refused to participate in supervised urine screens and never participated in substance-abuse treatment, or virtual group therapy. Nor was she able to sustain any type of employment for self-sufficiency. Mother claimed to have completed parenting classes, but she never presented a completion

certificate. She did use the Department's shelter-support services and remained consistent with her medication for a period of time. The medication helped decrease her aggression.

According to the case manager, however, mother never demonstrated any progress or "capacity to function at an independent level." The case manager testified that mother had "no insight at all into her mental illness, and . . . has not been willing to participate in any type of groups so that she can begin to develop the strategies to change her behaviors." She did not utilize "intensive therapy services, intensive group services, emotional regulation, individual therapy, [or] group therapy" that were offered to her. Mother became pregnant while the child was in foster care, and her psychiatrist discontinued her medication due to her pregnancy. Mother advised her case manager that she did not plan on resuming the medication after the birth of her twins because she felt she no longer needed it.

With her ban still in place from the Department's locations in the county, the Department offered, and mother participated in, supervised visitations with the child at the Fairfax County courthouse in 2020, when the child was approximately eight months old.[2] When the COVID-19 pandemic began, the visitations turned virtual. Mother had "two no-shows in person" and "four cancellations or no-shows as far as virtual visits." When mother appeared at the courthouse for visitations, she was engaged and "listened [and] took redirection," but she sometimes showed frustration over "personal issues that she was struggling with outside of the visits with [the child]." Mother's additional concerns that would cause her to be frustrated and "emotionally distraught" included her pregnancy, keeping her housing, keeping her doctors' appointments, and maintaining her mental health and well-being.

---

[2] Mother's visitation had been suspended until that time due to her ban "from [the Department's] Annandale building, the South County building and the Reston building due to threats to the supervisor, the program manager and the DFS worker."

- 4 -

At times, mother would also forget to bring supplies such as diapers, toys, or baby food to the visitations. On average, mother was thirty to forty minutes tardy to the visitations. During one visit, the supervising counselor smelled marijuana coming from mother. Mother fell asleep during another visitation. When asked what ongoing concerns she had about mother after eight months of supervising visits, the case manager said she would like mother to be more "engaged" and keep up with the child's doctors' appointments and other parts of his life beyond her visits. Overall, mother did not exhibit progress in parenting skills sufficient to warrant a recommendation from the Department for unsupervised visitations with child.

The Department ultimately filed for termination of mother's parental rights due to mother's "mental health," "non-compliance with mental health services," "continued instability," "lack of accountability," "limited ability for regulation," and her "limited . . . insight of her mental health." The Department also reasoned that she was unable "to provide a safe and stable consistent home for [the child] based on her inability to "be independent in the community."

The JDR court subsequently entered a permanency planning order, approving a permanent goal of adoption, as well as a termination of parental rights order, finding that termination was in the best interest of the child. Mother and father appealed, and the parties appeared before the circuit court on March 15 and 16, 2021. Father expressed on the second day of the trial, however, that he no longer wished to participate in the proceedings.

The Department presented evidence about its efforts to find alternative placements to foster care. Initially, the Department placed the child with his sister in a great aunt's home, but that placement did not work for the child. Mother had suggested the child's maternal grandmother as a possible placement, but the Department determined that the maternal grandmother was not a viable placement option due to her history of involvement with Child Protective Services.

At the conclusion of the evidence in the circuit court, the Department emphasized that there had already been a termination of mother's parental rights of the child's sibling and argued that termination would be in the best interest of the child in this case. The Department maintained that mother had been "noncompliant with mental health treatment. Her housing [was] not stable. She [had] a lack of accountability, [and] a lack of insight into her mental health." The Department argued that mother failed to prioritize the child and failed to remedy the conditions that brought the child into care.

Mother did not attempt to rebut any of the Department's evidence but argued that the evidence established that the Department failed to provide reasonable and appropriate services. Mother maintained that there was no evidence that she had been using drugs at any time relevant to these proceedings that warranted substance-abuse treatment; she denied that the child had been exposed to drugs as an infant. Mother also argued that the Department did not provide her with adequate assistance for securing stable employment. She maintained that she completed several services required by the Department, including attending the psychological evaluation, attending a parenting class, participating in medication management, and participating in case management. Mother also argued that she was a capable parent and could secure and maintain housing. Lastly, mother argued that there was "no testimony regarding what relatives might be available [for placement] to prevent this case from going to termination."

The child's guardian *ad litem* reported that the child was "doing fine" and thriving in his foster home. The child was visiting his biological sister once a week.

After hearing the evidence and arguments, the circuit court approved the goal of adoption and terminated mother's parental rights under Code § 16.1-283(C)(2) and (E)(i). Mother's appeal followed. The circuit court also terminated father's parental rights. Father did not appeal the circuit court's ruling.

ANALYSIS

Termination of parental rights

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Mother challenges the circuit court's termination of her parental rights. Mother argues on appeal that there was no evidence demonstrating that termination was in the child's best interest.

The circuit court terminated mother's parental rights under both subsection (C)(2) and subsection (E)(i) of Code § 16.1-283. The Department defends the circuit court's rulings on both grounds, and the guardian *ad litem* for the child joins in the Department's brief. Because we find that the termination was proper under subsection (E)(i), we need not reach the analysis under subsection (C)(2).

A parent's parental rights may be terminated under Code § 16.1-283(E)(i) "if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that (i) the residual parental rights of the parent regarding a sibling of the child have previously been involuntarily terminated . . . ." Code § 16.1-283(E)(i). There is no dispute in this case that mother's parental rights were terminated as to the child's biological sister before the child's birth.

Mother contends that it was not in the best interests of the child to terminate her parental rights. She argues that the evidence proved that she and the child "had a close bond, were loving with one another, and spent as much quality time together as the Department would allow . . . ."

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 319 (2013) (quoting Logan, 13 Va. App. at 128); see also King v. King George Dep't of Soc. Servs., 69 Va. App. 206, 211 (2018). "'[T]here is no simple, mechanical, cut and dried way' to apply the best interests of the child standard." Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 48 (2014) (quoting Peple v. Peple, 5 Va. App. 414, 422 (1988)). "Instead, 'the question must be resolved . . . in light of the facts of each case.'" Eaton v. Washington Cnty. Dep't of Soc. Servs., 66 Va. App. 317, 331 (2016) (quoting Toombs v. Lynchburg Div. of Soc. Servs., 223 Va. 225, 230 (1982)).

The circuit court found that the child was "doing well and thriving" in foster care. Meanwhile, mother "was struggling to even be able to take care of herself," unable to provide such basic necessities for the child as diapers or food, even in the "controlled environment" of supervised visitations. Considering that mother's parental rights to the child's biological sister were already terminated and that mother was now pregnant with twins, the circuit court also expressed doubt that "the mother could handle . . . three children under the age of approximately two." The circuit court also was concerned that mother would "go off of her meds, because she does not see the need for them." The circuit court relied on the findings from mother's psychological evaluation and found that mother lacked the ability to care for the child, despite all the services offered by the Department.

At the time of the circuit court hearing, the child was approximately twenty-three months old and had never been in mother's custody. The circuit court found that mother had not

progressed beyond supervised visits and was not in a position to have custody of the child. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett, 62 Va. App. at 322 (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

Contrary to mother's arguments, there was clear and convincing evidence to support the circuit court's rulings. The circuit court did not err in finding that it was in the child's best interests to terminate mother's parental rights and that the evidence was sufficient to support termination under Code § 16.1-283(E)(i).

"When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." Castillo, 68 Va. App. at 574 n.9; see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (affirming termination of parental rights under one subsection of Code § 16.1-283 and declining to reach termination of rights under another subsection). Because we find that the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(E)(i), we, therefore, do not need to reach whether mother's parental rights should also have been terminated under subsection (C)(2).

### Relative placement

Mother also argues on appeal that termination should not be "granted" because the Department "did not discharge its obligation" to explore relative placement. Mother contends that there was no evidence regarding the Department's efforts "to identify, locate and investigate potential relatives to assume custody of the child if he in fact could not be safely returned to his mother at the time of trial."

Before terminating a parent's rights, "the court shall give a consideration to granting custody to a person with a legitimate interest." Code § 16.1-283(A). "This Court has held that this provision obligates [the Department] 'to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options.'" Castillo, 68 Va. App. at 567 (quoting Brown v. Spotsylvania Dep't of Soc. Servs., 43 Va. App. 205, 217 (2004)). "We do not suggest that the Department has a duty in every case to investigate the home of every relative of the children, however remote, as a potential placement." Id. (quoting Sauer v. Franklin Cnty. Dep't of Soc. Servs., 18 Va. App. 769, 771 (1994)).

Here, the Department presented evidence that it initially placed the child with a great aunt, but that placement ended. Mother had suggested the maternal grandmother as a possible placement, but the Department determined that she would not be a viable placement because of her history with Child Protective Services. The record does not include any evidence of persons with a legitimate interest seeking custody of the child.

Therefore, contrary to mother's arguments, the circuit court had evidence about the Department's investigation into other placement options. "Because this Court defers to a lower court's judgment based on evidence heard *ore tenus* unless plainly wrong or without support, Logan, 13 Va. App. at 128, it does not disturb the circuit court's ruling that no relatives were suitable placements." Castillo, 68 Va. App. at 568.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.