COURT OF APPEALS OF VIRGINIA

Present: Judges Fulton, Ortiz and Senior Judge Petty
Argued at Lexington, Virginia

JAMIE LEE CAMPBELL WOODSON

                                                    MEMORANDUM OPINION* BY
v.      Record No. 0200-22-3                        JUDGE WILLIAM G. PETTY
                                                    NOVEMBER 1, 2022

LYNCHBURG DEPARTMENT OF SOCIAL SERVICES

                FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                            F. Patrick Yeatts, Judge

            (James J. Angel, on brief), for appellant. Appellant submitting on
            brief.

            (David W. Shreve; Bryan E. Klein, Guardian *ad litem* for the minor
            child; The Central Virginia Law Center, PLLC, on brief), for
            appellee. Appellee and Guardian *ad litem* submitting on brief.


        Jamie Lee Campbell Woodson (mother) appeals the circuit court's order terminating her

parental rights to her minor child, S.W. Mother argues that the circuit court erred in terminating her

parental rights because it failed to consider Wendy Campbell, the maternal grandmother

(grandmother), as a possible relative placement and did not grant her custody petition. We find no

error and affirm the decision of the circuit court.

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court [must] review the evidence in the light most favorable to the party prevailing in the circuit court." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 550-51 (2018) (quoting *Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 168 (2014)). As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

Mother and Stephen Woodson (father) are the biological parents of S.W., who is the subject of this appeal. The Lynchburg Department of Social Services (the Department) became involved with the family in 2017 after receiving a complaint of lack of supervision of the then-two-year-old S.W.[2] After a family assessment, the Department closed its case.

On November 25, 2019, the Department received a complaint alleging physical neglect of S.W. and learned that S.W. was present when the parents were arrested for possession of methamphetamine. S.W. stayed with grandmother that night, but the next day, drug paraphernalia was confiscated from mother and father's room in grandmother's home. When the Department asked grandmother about other adults using drugs in her home, she claimed ignorance of any drug use. Grandmother submitted to a drug test, which returned negative

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues mother raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[2] Mother, father, and S.W. were residing with grandmother at her home.

results. With mother's consent, the Department left S.W. in grandmother's custody on November 26, after implementing a safety plan with grandmother.

On November 27, 2019, however, the Department removed S.W. and placed him in foster care. Mother had tested positive for drugs, and the Department was concerned over imminent risk to S.W.'s life, health, and safety because mother had reported that other adults[3] in grandmother's home used methamphetamine.[4]

After S.W. entered foster care, grandmother petitioned for his custody. After conducting a home study for grandmother, the Department did not recommend that "custody be given to her." Mother told the Department more than once that she did not want S.W. to grow up with grandmother because she "had caused" mother trauma in her own childhood and mother did not want S.W. to suffer the same fate. Additionally, both parents reported that grandmother was selling prescription drugs from her home. Grandmother claimed that she was "naïve to drugs being used around her [and] that she did not know that drugs were being used in her home because she doesn't know what drug use is like."

After the Juvenile and Domestic Relations District Court for the City of Lynchburg (the JDR court) granted mother additional time to attempt to regain custody of S.W., the Department continued to explore placement options. As part of its investigation of grandmother as a possible relative placement, the Department required her to submit to a psychological evaluation, which she did on January 21, 2021.

---

[3] Grandmother lived with two adult male roommates.

[4] When S.W. entered foster care, he was four years old and tested positive for methamphetamine.

The clinical psychologist noticed that grandmother required "considerable assistance getting situated [and] entering the room."[5] Grandmother told the psychologist that since a car accident, her independence "has been out the window." Grandmother had an aide who provided daily assistance. Although grandmother had two roommates, one of them also had "a disability." Grandmother reported that before her accident, she had been caring for another grandchild, but after the accident, she determined that she could not care for the infant and had decided "to give him up for adoption." Grandmother also informed the psychologist that she had been diagnosed with obsessive-compulsive disorder and depression, for which she took medication. Grandmother had been participating in psychiatric services and outpatient mental health counseling for several years.

After the evaluation, the psychologist opined that grandmother "showed high risk for practicing abusive or neglectful parenting and child-rearing behavior." The psychologist expressed concern about grandmother's ability to care for S.W. because of her "numerous physical mobility challenges" and her dependence on others. Grandmother had described herself as "very meek and unassertive," which the psychologist believed might impede her ability to be appropriately "assertive[ ] and firm[ ]" in raising S.W. The psychologist noted that the parenting demands for S.W. would increase as he gets older, and grandmother would need to advocate for him at school and with his treatment providers "to ensure his overall stability." Ultimately, the psychologist concluded that grandmother would have difficulties parenting S.W. independently.

After receiving reports of domestic violence between mother and father, mother's attempted drug overdoses, and mother's psychiatric hospitalization, the Department filed a new foster care

---

[5] Grandmother had limited mobility. She previously fell and broke her leg in eleven places. The injury made it "hard for her to stand up or do[] anything." Then, in February 2019, grandmother was in a car accident, which "crushed" her pelvis. Grandmother required the use of a wheelchair after the accident.

plan, requesting a goal change from return home or relative placement to adoption. On April 9, 2021, mother and father failed to appear at the JDR court termination hearing. The JDR court terminated both mother's and father's parental rights to S.W. and approved the Department's foster care plan with the goal of adoption. Mother appealed the JDR court's order terminating her parental rights to the circuit court.[6] The JDR court also denied grandmother's petition for custody of S.W., which she appealed to the circuit court.

On November 5, 2021, the parties appeared before the circuit court on mother's appeal of the termination of her parental rights and grandmother's appeal of her custody petition. The Department presented evidence that S.W. had special needs, based in part on his diagnoses of attention-deficit/hyperactivity disorder, acute stress disorder, and anxiety disorder. Additionally, S.W. had "several social and emotional challenges" and showed signs of "developmental delays." While S.W. was in foster care, he had received "intensive in-home services" and participated in outpatient counseling. S.W.'s pediatrician had recommended psychiatric care for him because of his "escalating behaviors."

Grandmother testified that she had lived with S.W. and cared for him since his birth. Grandmother and her two long-term roommates rented a five-bedroom house in Lynchburg. Grandmother testified that S.W. had his own room in the house. When mother lived with her, grandmother did not realize that mother was using drugs, but she had started receiving counseling to help her identify when people around her were using drugs. Grandmother reported that none of her children lived with her and that she would not let them live with her. At the hearing, grandmother could walk short distances with a cane. For longer distances, she required a wheelchair.

The circuit court terminated mother's parental rights under Code § 16.1-283(B). In denying grandmother's petition for custody, the circuit court found that grandmother was "certainly willing"

---

[6] Father did not appeal the termination of his parental rights.

to provide for S.W.  Nevertheless, the circuit court found that the "real issue [was] capability, whether or not she's capable."  The circuit court expressed concern over grandmother's physical limitations and her reliance on others, especially considering that S.W. was "very active" and needed constant supervision.  The circuit court found that grandmother was not capable of caring for "this energetic, rambunctious child who has some special needs."  The circuit court also examined the safety of grandmother's house and expressly rejected her claimed ignorance of drug use in her home as incredible.  The circuit court emphasized that S.W. needed to be in a home free of drugs and "where individuals who are caring for him are capable of caring for him."  Mother appeals.[7]

## ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'"  *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (alteration in original) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)).  "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it."  *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

Mother argues that the circuit court "erred in not investigating [grandmother] as a possible relative placement and in not granting [grandmother's] custody petition, and in terminating mother's parental rights."[8]  Code § 16.1-283(A) mandates that in termination of parental rights cases, "the

---

[7] Grandmother did not appeal the circuit court's denial of her custody petition.

[8] The Department argues that mother does not have standing to challenge the denial of grandmother's custody petition.  We find, however, that mother's arguments focus on relative placement under Code § 16.1-283(A), for which she does have standing.

court shall give a consideration to granting custody to a person with a legitimate interest, and if custody is not granted to a person with a legitimate interest, the judge shall communicate to the parties the basis for such decision either orally or in writing."

The record reflects that the circuit court met its statutory obligation by considering grandmother as a relative placement. The Department presented evidence of its investigation of grandmother as a possible relative placement. Despite the services offered and grandmother's participation in those services, the Department determined that grandmother had certain limitations and could not meet S.W.'s needs, so it did not recommend her as a suitable relative placement. Grandmother disputed the Department's assessment; she testified about her relationship with S.W. and her willingness to care for him.

After considering all the evidence, the circuit court agreed that grandmother was willing to care for S.W. and weighed that willingness against S.W.'s special needs, grandmother's physical limitations, and her day-to-day reliance on others. Additionally, the circuit court considered the safety of grandmother's home and did not believe that grandmother was unaware of the drug use in her home. The circuit court found that grandmother was incapable of providing for S.W.'s needs. Thus, the circuit court met the Code § 16.1-283(A) requirements. *See Castillo*, 68 Va. App. at 568 (trial testimony of "several" relatives and evidence of department's investigation provided circuit court with "ample evidence" to consider relative placements); *Brown v. Spotsylvania Dep't of Soc. Servs.*, 43 Va. App. 205, 218 (2004) (statute satisfied where grandmother "testified at the hearing and informed the court of her 'suitability and willingness' to take [minor] into her custody"); *Hawthorne v. Smyth Cnty. Dep't of Soc. Servs.*, 33 Va. App. 130, 139 (2000) (statute satisfied where the trial court heard testimony of child's great aunt concerning her willingness and suitability for placement before it ordered the termination of his parental rights). Having reviewed the record, we do not disturb the circuit court's ruling that grandmother was not a

suitable placement because credible evidence supports that determination. *Castillo*, 68 Va. App. at 568.

## CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

*Affirmed*.